Jones, J.
(dissenting). I would reverse and reinstate Judge Bothwax’s determination that the search in this instance was unlawful and accordingly that the evidence thereby obtained must be suppressed.
The affidavit of the police officer on which the search warrant was issued in this case sought a “no-knock” search, and no doubt exists that it was sufficient for that purpose. In my view it does not follow that there was also the requisite for the issuance of an “any-time” warrant. (United States v. Mihileas, 333 F. Supp. 231 [U. S. D. C., S. D. N. Y., 1971].)
The purposes behind the statutory authorizations for ‘ ‘ no-knock ’ ’ and for ‘' any-time ’ ’ search warrants are quite different, though obviously they may overlap in certain fact situations. The ‘ ‘ no-knock ’ ’ is addressed to the probabilities of destruction of evidence if the possessor knows in advance *1038 that it is being sought. This risk is operative at any time of day or night, and over any period of time with reference to the issuance of the warrant., The risk of destruction adheres in the disposable character of the evidence on the very shortest notice.
On the other hand, and quite unrelated as I view it, the “ any-time ” warrant is addressed to a risk of removal or disappearance in point of time, and quite irrespective of whether the possessor has any advance warning of the search — to a risk that the evidence will be removed or gone if the execution of the warrant is delayed until the next morning.
The wording of the Code of Criminal Procedure (applicable in this case) appears to me to support the distinction I wpuld make. The second of the two grounds for issuing a nighttime warrant (the ground relevant to this case*) is probable cause for believing “that the property sought to be seized will be removed or destroyed if not seized forthwith ”. (Code Crim. Pro., § 801). On the other hand the no-knock authorization is based on reasonable cause to believe that ‘ ‘ the property sought may be easily and quickly destroyed or disposed of”. (Code Crim. Pro., § 799). (My emphasis in each instance.) The one relates to a prediction of what will occur if the search is not made, the other to what may occur if the search is made.
In this case the underlying affidavit after establishing the reliability of the police officer’s informant, describes the officer’s observations of the comings and goings from a New York City apartment on three separate occasions, Monday, April 12, 1971 from 5:10 to 5:45 p.m. • Tuesday, April 13, 1971 from 10:15 to 10:45 p.m. ; and Wednesday, April 14, 1971 from 6:20 to 8:50 p.m. In each instance persons known to use drugs were seen to enter the apartment, remain a short time and then leave. The officer further reported that his informant had purchased heroin at the apartment in the previous few days. He concluded that “ [observations of said premises indicate that drug users frequent said location both day and night.” He accordingly added: “ Because of the easily disposable nature of the contraband, request search warrant be issued without giving prior notice of the execution of same.”
*1039 The police officer made his application, and a search warrant containing both “no-knock” and “ any-time ” authorizations was issued at 7:25 p.m. on April 14, a little more than a half hour after the completion of the officer’s last observation. The warrant was executed at 10:00 p.m. that same evening and resulted in the seizure of heroin and cocaine.
Judge Rothwax found nothing in the police officer’s affidavit to justify a nighttime search and granted the defendant’s motion to suppress. On appeal, the Appellate Term reversed without opinion, and our court now proposes to affirm.
I agree with Judge Rothwax. There is nothing,here on which to base a finding of probable cause “ that the property sought to be seized will be removed or destroyed if not seized forthwith ” (Code Crim. Pro., § 801). The objective, and the fruits, of the search were heroin and cocaine, each a commodity having substantial inherent commercial value. I suggest that the risk of their disappearance before seizure depended on either of two contingencies only — disposal triggered by an apprehension of discovery or sale for commercial advantage. The character of the evidence certainly justified a “ no-knock ” authorization to thwart probable destruction on even the shortest notice. But there was nothing in the affidavit or implicit in the factual context here to suggest that there was any general apprehension of detection, or that the supply of drugs would be exhausted through commercial transactions before the next morning. The affidavit referred to activities “ both day and night,” and includes no suggestion of any expectation of cessation of those activities.
To the extent that significance' might be said to attach to the fact that the officer made his application for the warrant so promptly after the conclusion of his last observation, it can also be said that this is only consistent with good police practice — having laid the basis for the warrant the diligent officer proceeded promptly to obtain the warrant for execution the following morning. Any suggestion that this conduct reflected the officer’s evaluation of the situation as calling for immediate action is met by the fact that the officer did not request a nighttime warrant.
To sustain this warrant in the face of what I find is a total-absence of any proof of likelihood that evidence available on Wednesday evening would not be there on Thursday morning, *1040 pays little heed indeed to the mandate of the statute that probable cause be shown that the drugs would have been removed or destroyed if not seized forthwith.
It may- be suggested that affirmance here is dictated by our decision in People v. Misuraco (16 N Y 2d 542). I find that case distinguishable. There the proof before the issuing Magistrate disclosed a pattern of behavior — the delivery to the premises in the late afternoon and early evening each day of policy slips and money under circumstances from which it could be inferred that there was a significant risk that the evidence would be gone by morning. Although I would not consider the inclusion in the supporting affidavit of a request for a nighttime warrant either necessary or a touch-stone (any more than I would be prepared to attribute any similar significance to brevity of time interval between observation and application), to the extent that it is relevant at all, I note that there was a request for a nighttime warrant in the affidavit in Misuraco.
The order of the Appellate Term should be reversed and the order" of the Criminal Court reinstated.
Order affirmed.

 There is no suggestion here that this ease comes within the first ground, “that the warrant cannot be executed between the hours of 6:00 a.m. and 9:00 p.m.” (Code Crim. Pro., § 801).